JAMES C. DAVIS, DIRECTOR GENERAL OF RAILROADS, AS AGENT, APPELLANT, v. IRA R. CROUSE, RESPONDENT.

Submitted December 10, 1923—Decided March 3, 1924.

The interstate commerce commission has no authority to fix rates for the transportation of property by a railroad company between points wholly within one state, as the Interstate Commerce act contains an express proviso that the provisions of the act regulating the transportation of passengers and property shall not apply to intrastate commerce. The case of *Lehigh Valley Railroad Co. et al.* v. *Maas & Waldstein* (decided at the present term of this court), distinguished.

On appeal from the Supreme Court.

For the appellant, *Adrian Lyon.*

For the respondent, *Emil Stremlau.*

The opinion of the court was delivered by

KALISCH, J.   This cause is here on appeal from a judgment of the Supreme Court affirming a judgment of the Perth Amboy District Court, in favor of the defendant against the plaintiff, from which judgment the plaintiff is appealing here.  From the record it appears that in September, 1921, the Lehigh Valley Railroad Company brought an action against the defendant, Crouse, in the District Court, to recover from him a balance alleged to be due from him for freight charges for the transportation of sand from the Raritan River Sand Company, in the township of Raritan, to the American Smelting and Refining Company, in the city of Perth Amboy, both places being within the State of New Jersey.  When the judgment came before the Supreme Court for review, the plaintiff-appellant asked leave to substitute for it as plaintiff-appellant the present plaintiff-appellant, upon the ground that the cause of action arose during the period of federal control of railroads, and that any right of

action which existed accrued to the director general and not to the then stated plaintiff-appellant. Leave was granted and the pleadings were amended in that respect.

The undisputed facts which gave rise to the plaintiff's claim are these: The defendant applied to the agent in charge of the railroad company's freight department for the rate of shipment of the same and was given the rate as forty cents per ton. The sand was shipped and the defendant paid the rate given him by the agent. Subsequently, the railroad company sent him a bill charging fifty cents per ton for the shipment and demanded payment of the extra ten cents per ton. It was the difference between the rate paid by the defendant and the rate fixed by the interstate commerce commission that the plaintiff sued for.

The plaintiff in support of the claim introduced in evidence the tariff, issued under the authority of the interstate commerce commission on April 15th, 1918, which was fixed on April 20th, 1918, and was known as Tariff No. 9694, from which it appeared that the rate for such transportation was to be forty cents per ton. And further, by a special supplement, the tariff issued under the authority of the interstate commerce commission on June 20th, 1918, which was posted on June 25th, 1918, and offered in evidence, it appeared by paragraph 7 thereof, and by second column A and B, on page 4, that the rates for said transportation were increased twenty-five per cent., so that the rate which was fixed June 25th, 1918, under the authority of the interstate commerce commission, and was published at the time of the said transportation sued for, was fifty cents per ton, instead of forty cents per ton, which latter charge made by the company and paid by the shipper was a mistake of the agent of the railroad company. Upon the foregoing premises the theory is evolved on behalf of the appellant that the rate charged and paid was below that fixed by the tariff issued under the authority of the interstate commerce commission on April and June, 1918, and that, therefore, the plaintiff-appellant was entitled to recover the difference between that tariff rate and the rate actually paid.

The fundamental difficulty with the proposition advanced is that there was no authority conferred by congress upon the interstate commerce commission to fix a tariff rate upon an intrastate shipment, which was the case here. This is conspicuously and clearly pointed out by the opinion of the Supreme Court.

The state of case agreed upon does not show that the director general, the plaintiff-appellant, who, at the time of the transportation of the freight was in control of the railroad and was being operated by him, and who in the execution of the power conferred upon the president of the United States and delegated by him to the director general had fixed an intrastate rate which had been posted with the interstate commerce commission.

For, as above expressed, the interstate commerce commission was without power, under the federal statute, to fix an intrastate rate.

There is an apparent and marked difference between the facts of this case and those present in Lehigh Valley Railroad Co. et al. *v.* Maas & Waldstein (decided by us in this term of court), which was a case dealing with an intrastate shipment and in which the freight rate charged by the company and paid to it was below the tariff rate fixed by the director general and posted with the interstate commerce commission, under the power delegated to the director general by the president, and where we held that the difference between the rate paid and the tariff rate fixed was recoverable by the director general, whereas in the present case no such situation exists, but, on the contrary, it appears that the intrastate rate was fixed by the interstate commerce commission, which it had not the lawful power to do.

Mr. Justice Minturn, in the case referred to, in speaking for the court, states with conciseness and clearness the fundamental basis of the right of recovery under the facts of that case, as governed by the federal statutes.

But as to the case *sub judice,* it is quite clear that the published rate of the interstate commerce commission could have no legal effect upon intrastate shipments. The Inter-

state Commerce Act, *inter alia,* contains this provision: "Provided, however, that the provisions of this act shall not apply to the transportation of passengers or property, or to the receiving, delivering, storage or handling of property wholly within one state and not shipped to or from a foreign country from or to any state or territory as aforesaid." 4 *Fed. Stats. Anno.* 336, where numerous cases are cited explanatory of the text, and holding that the interstate commerce clause was not applicable to shipments wholly within the state.

Pursuing the same subject in allied thought, the following cases are in harmony with the views leading to the result reached in this case: *Houston E. & W. T. R. Co.* v. *United States,* 234 *U. S.* 342 (at *p.* 353); *Newberry* v. *United States,* 256 *Id.* 232 (at *p.* 289).

The judgment of the Supreme Court is affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, KALISCH, BLACK, KATZENBACH, CAMPBELL, HEPPENHEIMER, GARDNER, VAN BUSKIRK, CLARK, JT. 11.

*For reversal*—None.